[No. 24112-5-I.   Division One.   April 15, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN
BRADFORD, *Appellant*.

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Georgina D. Sierra, Deputy,* for respondent.

SCHOLFIELD, J.—John L. Bradford appeals his convictions for possession of a controlled substance (count 1) and for possession of a controlled substance with intent to deliver (count 2). We affirm.

## FACTS

On December 19, 1988, Bradford was charged by amended information with possessing cocaine on or about October 24, 1988 (count 1); he was also charged with possessing cocaine with the intent to manufacture or deliver on or about September 3, 1988 (count 2). The circumstances concerning his arrests for these crimes were as follows:

On September 3, 1988, at approximately 12:30 p.m., Seattle police officers served a search warrant on a residence located at 3245 S. Juneau Street in Seattle. The officers watched the residence for approximately 1 hour prior to obtaining the warrant. During that time, they observed at least eight or nine vehicles arrive and depart from the residence within 10 minutes. The officers saw at least six people enter the house and leave within a minute of arriving. The search warrant, served that same evening, directed the officers to search for a black male, approximately age 50, with the first name of "John". They were also to search for narcotics, drug paraphernalia, money, and papers relating to dominion and control.

The officers found Bradford in the living room and two small children asleep in one of the bedrooms. They also found a baby food jar in boiling water on top of the stove in the kitchen. The contents of the jar was later tested and found to contain cocaine. The officers also found a pillowcase with a container of rock cocaine inside it and a loaded revolver in one of the bedrooms, a scale with cocaine residue on it, three meat containers with cocaine powder in them, and $576 in United States currency. In addition, the officers found items of drug paraphernalia, several receipts, and a Seattle City Light bill showing Bradford's name and the S. Juneau Street address.

On October 24, 1988, Seattle police officers again served a narcotics search warrant at 3245 S. Juneau Street in Seattle. The warrant directed the officers to search for narcotics, paraphernalia, papers showing dominion and control, firearms, and an individual named "Carol."

Because the officers heard the sounds of people running and glass breaking after the officers knocked, they forced the door with a battering ram. Five adults were found in the residence: three, including Bradford, in a bedroom, and two in the kitchen. Bradford was in bed when he was found, clad only in his underwear. Officers also found papers of dominion and control on the nightstand next to the bed and a loaded handgun in the bedroom under the bed.

A search of the kitchen area, where the two other adults were, yielded a semiautomatic handgun, and a jar containing cocaine being cooked on the stove. The officers also found some powdered cocaine on the kitchen table, a broken glass vial, and a metal pipe with narcotics residue. On the kitchen counter, they found a broken glass vial and more rock cocaine. The officers found two envelopes and a telephone bill for the S. Juneau residence addressed to Bradford at that address. These items were found near the nightstand in the bedroom where Bradford was located.

Prior to trial, Bradford moved to sever the two counts, claiming potential prejudice, since one charge was for simple possession, while the other charge was for possession with intent to deliver. The trial court denied the motion.

The trial court's instructions included instruction 5, which read as follows:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

During deliberations, the jury submitted in writing the following question to the trial court:

> Can the jury consider knowledge gained from one count when deliberating on the other count[?] We are speaking of knowledge only, not evidence.

The trial court's response to the jury inquiry read as follows:

> The jury is free to determine the use to which it will put evidence presented during trial.

Defense counsel objected to this response from the trial court and moved that the court should instruct the jury to follow instruction 5 and instruct the jury that evidence relative to each count should be considered separately from the other count.

The jury found Bradford guilty on both counts. Bradford was sentenced concurrently to 2 months on count 1 and 15 months on count 2, both minimum sentences. This appeal timely followed.

## JURY INQUIRY

Jury instructions are sufficient if, when taken together, they allow the parties to argue their theories of the case, are not misleading, and accurately inform the jury of the applicable law. *Gammon v. Clark Equip. Co.,* 104 Wn.2d 613, 707 P.2d 685 (1985). Erroneous instructions given on behalf of a party in whose favor the verdict is returned are presumed prejudicial unless it is affirmatively shown that they were harmless. *State v. Rice,* 102 Wn.2d 120, 683 P.2d 199 (1984). An error in instruction is harmless only if it has

no effect on the final outcome of the case. *State v. Rotunno,* 95 Wn.2d 931, 631 P.2d 951 (1981).

There is no dispute between the parties here that the trial court's instruction 5, informing the jury that it was to consider each count separately, was a correct statement of the law. However, Bradford argues that the trial court's response to the jury inquiry contradicted this instruction. Both parties in their briefs appear to base their arguments in part on knowledge as an element of the possessory crimes with which Bradford was charged. However, it seems very likely, from reading the jury's inquiry, that the jurors were not concerned with *Bradford's* knowledge, but rather, with their own knowledge derived from the evidence.

The State argues that the response was a mere paraphrase of the trial court's instruction 1, which stated in part that the jury was to consider "all of the evidence introduced by all parties bearing on the question." However, we believe that the trial court's response was more likely to have been interpreted that the jury was indeed able to consider knowledge gained in deciding one count when considering the other count. We reject Bradford's argument that the trial court's response contradicted instruction 5. That instruction merely required that the jury deliberate on each count separately. In addition, in the absence of a limiting instruction, we hold that there was no trial court error here. In this case, there was evidence indicating dominion and control that was admissible on both counts. The jury was to decide each count separately and was free to consider any evidence relevant to count 1 in deciding count 1. It was free to consider any evidence relevant to count 2 in deciding count 2.

We recognize that instruction 5, WPIC 3.01 (revised), most likely triggered the jury's inquiry about the use of evidence in the two counts. It may be that some modification of the instruction consistent with this opinion is in order. We note that the Washington Supreme Court Committee on Jury Instructions modified WPIC 3.01 to delete the phrase "as if it were a separate trial" from the second

sentence of the instruction to eliminate confusion. Similarly, some additional language informing the jury that in the absence of a limiting instruction, all evidence is applicable on all counts, providing it meets relevance requirements, is needed.

### SUFFICIENCY OF THE EVIDENCE

■ A challenge to the sufficiency of the evidence to convict cannot be sustained if, considering the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). In *State v. Theroff*, 25 Wn. App. 590, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980), the Washington State Court of Appeals also noted:

> A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. The evidence is interpreted most strongly against the defendant and in a light most favorable to the State.

*Theroff*, at 593.

■ Possession of property can be either actual or constructive. Actual possession occurs when the goods at issue are in the personal custody of the person charged with possession. On the other hand, constructive possession can be shown if the person charged has dominion and control over the goods in question or of the premises in which they are located. *State v. Amezola*, 49 Wn. App. 78, 741 P.2d 1024 (1987).

■ Although exclusive control is not a prerequisite to establishing constructive possession, mere proximity is insufficient to show dominion and control. Temporary residence, personal possessions on the premises, or knowledge of the presence of the drug, without more, are also insufficient. *State v. Hystad*, 36 Wn. App. 42, 671 P.2d 793 (1983). Whether an individual has dominion and control over a controlled substance is determined by considering

the various indicia of dominion and control and their cumulative effect—that is, the totality of the situation. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977).

In *State v. Dobyns,* 55 Wn. App. 609, 779 P.2d 746, *review denied,* 113 Wn.2d 1029 (1989), the court held that the State's evidence of dominion and control was sufficient, based on the following: Prior to the search, Dobyns' car was seen parked near the house. A ceramics supply store bill that had been mailed to Dobyns at the address where the search took place was taken from a bulletin board in the house. The officers obtained one of Dobyns' business cards at the house. The card listed two phone numbers, one of which was the phone number of "Equity Bronze and Burl", listing the address where the search took place. Phone company records showed that the phone number of the business was billed to Dobyns.

Similarly, in *State v. Partin, supra,* Partin, the vice–president of a club, was charged with possession of marijuana found during a search of the group's clubhouse. In examining the question of sufficiency of the evidence of dominion and control, the court noted that Partin's connection with the house was far from casual. He had been seen at the house on numerous occasions by the police. His motorcycle had been observed chained to the front porch. An officer investigating Partin's claim that his motorcycle was stolen was told to contact Partin at the clubhouse. During the search, the police answered the phone and the callers were looking for Partin, and several people stopped by looking for Partin.

The search revealed personal items belonging to Partin located in the clubhouse's back bedroom, including a photograph of Partin, articles of clothing and unemployment pay stubs. In addition, as vice–president of the club, Partin was acknowledged to have a certain amount of control over the clubhouse, as evidenced by his stepping forward to deal with police who came to investigate a noise complaint. *Partin,* at 908. The *Partin* court held that the evidence was sufficient to show dominion and control. *Partin,* at 908. *See*

*also State v. Hagen,* 55 Wn. App. 494, 496, 781 P.2d 892 (1989) (evidence that defendant received some mail at the residence and lived there "'off and on'" insufficient to show constructive possession); *State v. Amezola, supra* (evidence of freedom to use the premises, combined with residence status and knowledge of drug transactions occurring there, sufficient to establish constructive possession); *State v. Gonzales,* 46 Wn. App. 388, 731 P.2d 1101 (1986) (evidence of nonexclusive possession of premises combined with knowledge of presence of controlled substances sufficient to show constructive possession).

▮ Applying the law to the facts before us, we hold that the State presented sufficient evidence of dominion and control in both counts. On September 3, 1988, the officers found Bradford as the only adult present in the residence, accompanied only by two small children. In addition, the officers found several receipts and a utility bill in Bradford's name addressed to him at the S. Juneau Street address and billing him for service at that address. On October 24, 1988, the evidence of dominion and control consisted of finding Bradford in bed in a state of undress, finding two envelopes addressed to him, and finding the telephone bill for the residence in his name, sent to him at the residence address.

Because both counts concerned constructive possession, the question of dominion and control was an issue in both. The arrests occurred sufficiently close in time, such that the dominion and control evidence seized on both days was admissible in both counts. We hold that the evidence was sufficient to show dominion and control of the residence, and hence, the drugs. Although Bradford's presence in the home on September 3, 1988, might be explained away by saying that he was merely "baby–sitting", a visitor or temporary resident of a house does not receive the premises' utility bills in his name. Likewise, while Bradford's presence in the home in a state of undress, and even his reception of mail at the address might not necessarily be sufficient to show dominion and control, a casual visitor has

no responsibility for the payment of the telephone bill, as evidenced by the bill in Bradford's name. Dominion and control was established here.

The judgment is affirmed.

FORREST, J., concurs.

PEKELIS, J. (concurring)—I concur in the result, but do not agree with the majority's interpretation of WPIC 3.01 and its conclusion that the trial court's answer to the jury inquiry was proper.

In my opinion, the trial court's response that "the jury is free to determine the use to which it will put evidence presented during trial" misstates the law. In approving this response, the majority holds that the jury *was* able to consider knowledge gained in deciding one count when deciding the other count. It is able to reach this conclusion because it erroneously reads WPIC 3.01 as "merely" requiring that the jury "*deliberate*" on each count separately.

First, the majority is mistaken since both instruction 5, given by the trial court here, and WPIC 3.01 itself do not use the word "deliberate," but the word "decide." This in itself seems significant.

Furthermore, the majority's conclusion at page 861 that "in the absence of a limiting instruction . . . [t]he jury was . . . free to consider any evidence relevant to [either] count . . . in deciding [that] count"[1] totally eviscerates WPIC 3.01. The majority fails to recognize that WPIC itself *is* a limiting instruction; thus, there is no requirement that the defendant request or the trial court give *another* one. WPIC 3.01 tells the jury that the evidence of each crime is to be considered only for a "limited purpose," *i.e.*, only on

---

[1]Deciding what is "relevant" legally is not a task usually relegated to the jury. As explained by the court in *State v. Holmes*, 43 Wn. App. 397, 400, 717 P.2d 766, *review denied*, 106 Wn.2d 1003 (1986), matters which are *logically* relevant are not necessarily *legally* relevant.

the count to which it pertains. *See, e.g., State v. Easta-brook,* 58 Wn. App. 805, 814–15, 795 P.2d 151 (concluding jury "capable of compartmentalizing the evidence" because, *inter alia,* "jury was instructed to decide each count separately"), *review denied,* 115 Wn.2d 1031 (1990).

Although there appear to be no cases in which WPIC 3.01 itself is interpreted, a review of the case law on severance indicates that WPIC 3.01 was intended as a necessary safeguard in preventing the jury from merging or cumulating evidence in joined trials.

In *State v. Smith,* 74 Wn.2d 744, 755, 446 P.2d 571 (1968), the Supreme Court (quoting *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964)), *cert. granted, vacated in part,* 408 U.S. 934 (1972) explained the danger from joining offenses as follows:

> The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. . . .

In *State v. Harris,* 36 Wn. App. 746, 750, 677 P.2d 202 (1984), the court set out the four prejudice–mitigating factors to be considered in deciding whether joinder in a particular case was improper:

> (1) The strength of the State's evidence on each count, (2) clarity of defenses to each count, (3) the court properly instructs the jury to consider the evidence of the crime, *and* (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

The third factor is clearly satisfied if WPIC 3.01 is given. Read in context with the other prejudice–mitigating factors, it is evident that "properly instructs the jury to consider the evidence" means a warning to the jury *not* to use the evidence in any way it wishes.

The Supreme Court's recent pronouncement in *State v. Bythrow,* 114 Wn.2d 713, 790 P.2d 154 (1990) confirms the fact that the purpose of WPIC 3.01 is to compartmentalize

and limit the use of the evidence elicited on each count to that count. In holding that the trial court did not abuse its discretion in refusing to sever, the court stated:

> the jury was not likely in this case to confuse which count particular evidence was introduced to establish. When evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime. . . . *We must insure that the trial court properly instructed the jury on the limited admissibility of evidence,* . . . and will determine whether the jury appeared to have followed the instructions.

(Italics ours.) *Bythrow,* 114 Wn.2d at 721 (quoting *United States v. Johnson,* 820 F.2d 1065, 1071 (9th Cir. 1987)). *See also State v. Ramirez,* 46 Wn. App. 223, 730 P.2d 98 (1986) (conviction reversed because jury may well have "cumulated evidence" or used evidence in count 1 to infer criminal disposition to base guilt on count 2).

In summary, I read WPIC 3.01 as a broad limiting instruction. I recognize that there will be times in a joined trial when evidence elicited on one count *may* properly be considered in deciding the other count, for example, if the evidence has a proper "purpose" as defined under ER 404(b). Even under these circumstances, however, the trial court would not simply let the jury consider the evidence admitted under ER 404(b) for any purpose. Rather, the trial court would give a jury the specific limiting instruction applicable to consideration of evidence admitted under ER 404 (b). Thus, the jury would be instructed that the evidence was to be used by it only for the limited purpose for which it was admitted, *i.e,* to show intent, knowledge, or absence of mistake, and *not* for the purpose of showing that the defendant acted in conformance with a criminal propensity.

Despite my disapproval of the trial court's response to the jury, whether the error was harmless is decided under the nonconstitutional error standard. I believe there is overwhelming evidence of the defendant's knowledge in

count 2 itself, and therefore I would conclude that the error was harmless.

[6] FORREST, J. (concurring)—I fully concur in Judge Scholfield's opinion. I write separately to emphasize that in a trial where several counts are joined, it is the defendant's obligation to identify any evidence which, admissible on one count but not on another, may create a risk of prejudice. The court can then properly instruct the jury. As I understand it, that is exactly the message of the quote from *State v. Bythrow*[2] at page 867 of the concurring opinion by Judge Pekelis.

WPIC 3.01 cannot operate as a limiting instruction unless the jury is told what evidence cannot be used for what purpose. Evidence does not come in labeled "count 1" or "count 2." We cannot expect a jury in deliberations to make fine evidentiary distinctions as to what evidence goes to what count without specific guidance. If protection against misapplication of the evidence by the jury is needed, it must be by specific instruction identifying the evidence in question.

Evaluating the risk of prejudice from any evidence not admissible on counts is central to the original decision to sever or join. Once the decision to join is made, there is no way to monitor the jury's use of the evidence in the course of deliberations. The legal rule should acknowledge the practical reality and permit the jury to use evidence as it sees fit absent a limiting instruction. In my view, the trial court properly responded to the jury's question.

SCHOLFIELD, J., concurs with FORREST, J.

Review denied at 117 Wn.2d 1003 (1991).

---

[2] 114 Wn.2d 713, 790 P.2d 154 (1990).