IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32587-3-III |
| Respondent, | ) | (consol. with |
| | ) | No. 32588-1-III) |
| v. | ) | |
| | ) | |
| BENJAMIN G. CHILDS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, C.J. — Benjamin Childs appeals his convictions following a joint trial of crimes committed a week apart. His principal complaint is that his trial lawyer provided ineffective assistance by failing to renew a motion to sever trial and by failing to request an instruction informing the jury that each charge was to be considered separately.

We do not infer ineffective assistance where a trial lawyer's conduct can be explained as tactical and here, Mr. Childs's lawyer was arguably trying to maximize the prospect of concurrent sentencing. Mr. Childs does not demonstrate that his lawyer's

failure to request the jury instruction was prejudicial. We therefore affirm the convictions.

Mr. Childs challenges his sentence on two grounds. We decline to consider his challenge to the legal financial obligations imposed, which he raises for the first time on appeal. We agree that the trial court erred in failing to specify the duration of a no-contact order and remand for the limited purpose of correcting that oversight.

## FACTS AND PROCEDURAL BACKGROUND

Benjamin Childs was tried below on four counts, arising directly or indirectly out of crimes he committed on two nights in November 2013.

### *November 5, 2013*

The first crime took place on the night of November 5. Earlier in the fall, Mr. Childs and his former girlfriend, Amber Haning, had been living with Mr. Childs's sister, Cherokee Escallier, at her apartment in Lewiston, Idaho. After they were evicted in early November, Ms. Escallier and Ms. Haning moved in with Ms. Haning's cousin, Rick Perrigo, who lived in Clarkston. Ms. Escallier and Ms. Haning would later testify they accidentally brought some of Mr. Childs's belongings to Mr. Perrigo's home during their move. Mr. Childs was upset about this and repeatedly asked that his belongings be returned.

On the early evening of the 5th, a Tuesday, Mr. Childs traveled to Mr. Perrigo's house in order to retrieve his possessions. When Mr. Perrigo refused to let Mr. Childs

2

enter his home, Mr. Childs pushed the door open and sprayed Mr. Perrigo in the eyes with what Mr. Perrigo described as "bear mace." Report of Proceedings (RP) at 42. Mr. Perrigo managed to close the door and dial 911. When police officers arrived at Mr. Perrigo's home, they found him outside, frantically spraying his face with water from a garden hose. His face was red, he was coughing incessantly and having difficulty breathing, and mucus was running from his nose and mouth. On November 8, the State filed an information charging Mr. Childs with burglary in the first degree and second degree assault of Mr. Perrigo.

Mr. Childs would later offer an alibi and claim he was not at Mr. Perrigo's home on the evening in question. He would contend that Mr. Perrigo, who was jealous of Mr. Childs's relationship with Ms. Haning, had a motive to fabricate the accusation.

*November 11, 2013*

The following Monday, at around 2:00 a.m., Mr. Childs and Ms. Haning knocked on the door of the home of Michael Provost, Ms. Haning's former landlord, awakening him. When he answered the door, they told him they ran out of gas and were cold, and asked if they could come in and warm up. According to Mr. Provost, the three of them were sitting in his living room when Ms. Haning asked if she could make coffee. When he said yes, she rose and proceeded into his kitchen. After a few moments, Mr. Childs told Mr. Provost that he was going to go check on her.

3

According to Mr. Provost, "the next thing I knew I got whacked in the back of the head." RP at 106. When he turned around, he saw Mr. Childs armed with what he described as a cheap-looking machete, and saw Ms. Haning standing behind Mr. Childs, in the corner by the door. Mr. Provost, who had a guest staying at his home, yelled "Call the cops!" RP at 107. Movement could be heard elsewhere in the house in response, and Mr. Childs and Ms. Haning "took off running" toward Clarkston as Mr. Provost called 911. RP at 107. When officers responded to the call, they found Mr. Provost holding a towel around his head, with blood running down his neck. Deputy Carpenter observed a superficial wound on the back of his head. On December 2, the State amended the information it had filed in the Perrigo case to include a second degree assault charge based on the assault of Mr. Provost.

Mr. Childs would later offer an alibi and claim that he was not at Mr. Provost's home on the night in question. He contended that Mr. Provost, who claimed to have been ripped off by Mr. Childs and Ms. Haning in an earlier drug deal, had a motive to fabricate the accusation.

### *Severance by the State*

On January 24, 2014, the State elected to charge the cases involving the two victims separately. It filed a second amended information in the original case, dropping the charge of second degree assault against Mr. Provost, and filed an information in a

4

new case containing the single count of assault against Mr. Provost. It added a request for a deadly weapon enhancement to the Provost assault charge.

The Provost case was originally set for trial on February 25, 2014, while the case involving Mr. Perrigo was scheduled for February 27. On the Thursday before the Provost trial, Mr. Childs called Ms. Escallier from the Asotin County Jail and, in a phone call that was recorded, asked his sister to hang out with Mr. Provost and get him "high as fuck on Monday" so that he would be "spun out" when he came to court for trial on Tuesday. RP at 217.

Evidently based on the State's service of new discovery, both trials were continued. On March 10, the State amended the information in the Provost case to include one count of witness tampering.

At a trial setting hearing that evidently took place in the early March 2014 time frame, the State made an oral motion to consolidate the cases and the court set a hearing for March 17 to determine whether the cases would be tried jointly or separately. The hearing was conducted by Commissioner Scott Marinella. Mr. Childs urged the court to deny the State's request for consolidation, relying principally on the weakness of the State's cases individually, the strength of his alibis, and his contention that the "cumulative evidence is going to strengthen both cases, whereas individually they're going to be weak." RP at 9.

5

In oral argument, Mr. Childs's lawyer represented that the State's reason for amending the original information and charging the crimes separately had been to obtain a longer sentence:

> The motive to begin with to sever these was the fact that if Mr. Childs was convicted individually of each one of these crimes, when he was sentenced the sentence would then be consecutive and not concurrent. And that was made clear to me that was going to be the—the issue of why they severed it to begin with. And it was the state's motion to sever that, simply to their advantage, that if he was found guilty then they could sentence him to more time, period.
>
> So, they had a direct motivation to do that before, at their request.

RP at 7. He added that "Mr. Childs should not be prejudiced by the state backtracking on their original motion." RP at 11.

Commissioner Marinella determined that consolidation of the two cases was appropriate. Considering the four severance factors outlined in *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994), the commissioner found that (1) sufficient evidence supported each charge, independent of the others, such that each could be tried separately; (2) the defense theory was the same as to each case "including alibi and motive for each victim to fabricate allegations"; (3) the jury could be adequately instructed on the separate nature of the offenses; and (4) the evidence to be used in each of the cases was substantially similar and may be cross-admissible. Clerk's Papers (CP) at 31.

6

Defense counsel moved to revise the commissioner's ruling. After hearing arguments from the parties, Judge William Acey denied the motion to revise. He noted that while the cases involved different victims, there was a "fairly good crossover and commonality of witnesses" and that the defenses were identical in each case. RP at 28. Judge Acey concluded that the "most compelling factor" was that the allegations were only six days apart and "part of a common nucleus of alleged operative facts." *Id.* Finally, the court noted that the jury would be instructed that the counts are to be considered separately and that their verdict in one count cannot control their verdict in any other count.

A different judge, the Honorable Scott D. Gallina, presided over the trial. Defense counsel did not renew the motion to sever at trial, either before or at the close of the evidence, as permitted by CrR 4.4(a)(2). The jury found Mr. Childs guilty on all counts.

At sentencing, the State recommended the maximum standard-range sentence for each of the charged offenses. That amounted to 116 months on the Perrigo burglary and 96 months on the Provost assault, to include the 12 month deadly weapon enhancement. It also argued for exceptional consecutive sentencing of the burglary conviction in the Perrigo case and the second degree assault conviction in the Provost case. The State emphasized that Mr. Childs had a long criminal history, had "earned his offender score," and "shouldn't be able to hide behind the fact that multiple cases occurred at once." RP at 449.

7

In response, defense counsel requested a standard-range sentence with concurrent sentences. He reminded the court of the procedural history and the "end runs" the State had made, all to Mr. Childs's disadvantage:

> [T]here's been a lot of end runs by the state in this case. And it started with the state's own motion to separate these cases out. And the main purpose was that—and it was made very clear to me, the main purpose for separating them out was to ensure that if Mr. Childs had separate trials and was found guilty on separate occasions, that they then could sentence him consecutively. And that was a threat that was given.
>
> Well, that was the state's motion. They separated the cases out. Then we have an end run where for some reason they decided they wanted to put the cases back together again. And I fully believe that was because they didn't have the evidence in one case and they needed to have the other case support the first case. And I do believe, looking at trial and hearing the evidence and lack thereof, I do believe that was to the disadvantage of Mr. Childs.
>
> . . . .
>
> But the state sat here in front of the court and said "The main reason why we want to put these back together again is judicial economy, and the cases involve a lot of the same players, and the same type of crimes, and the same victims, pretty much, within the same week." So they had all these reasons why to consolidate these cases into one case.
>
> Well, we did that. Against my objection Judge Acey went ahead and did that.
>
> But now that we come to sentencing, now the state wants to separate them again, and say, "Well, yeah, but—even though we had the evidence or even we had the court rule in our favor to put them together, now we want to separate them back out again."
>
> So, there's about three different end runs that we've had, and I don't believe the state should get more than one bite at the apple, and this is their third bite they're trying to take, simply to now sentence Mr. Childs to an exorbitant amount of time.

RP at 451-53.

8

In sentencing Mr. Childs, Judge Gallina observed that he had "question[ed]" the pretrial decisions regarding consolidation but was "bound to administer a sentence in accordance with Washington state law and accordance with the finding of a jury in a trial that was held in a lawful, authorized manner." RP at 465. He explained that he "tried to take that into account and come up with a balanced sentenced [sic] in this case." *Id.* He sentenced Mr. Childs to 100 months' confinement for the burglary charge, to run concurrent with the 84 months imposed in connection with the assault against Mr. Perrigo. He sentenced Mr. Childs to 72 months for the assault against Mr. Provost, which included twelve months for the deadly weapon enhancement. Although the 72 months ran concurrently with the 60 months imposed for the witness tampering offense, it ran consecutively with the 100-month sentence imposed in connection with the Perrigo case. Mr. Childs was therefore sentenced to 172 months, or roughly 14 years, of total confinement.

Both judgment and sentences ordered Mr. Childs to pay legal financial obligations (LFOs) totaling $2,050, consisting of a $500 victim assessment, a $200 criminal filing fee, $750 in court appointed attorney fees, a $500 fine under RCW 9A.20.021, and a $100 DNA[1] collection fee. Mr. Childs made no objection to the LFOs. The court also ordered Mr. Childs to have no contact with Mr. Provost, but without specifying a

---

[1] Deoxyribonucleic acid.

9

duration for the no-contact order. Mr. Childs appeals his judgment and sentence in both cases.

## ANALYSIS

### *I. Ineffective assistance of counsel*

Mr. Childs's principal challenge on appeal is to the adequacy of his representation in trial; specifically, to his trial lawyer's failure to renew his motion to sever the cases for trial and failure to request an instruction directing jurors to decide each count separately.

The Sixth Amendment of the United States Constitution guarantees the effective assistance of counsel. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by that failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

A defendant "must overcome 'a strong presumption that counsel's performance was reasonable.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). To rebut this presumption, a defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *McFarland*, 127 Wn.2d at 336. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

10

To demonstrate ineffective assistance of counsel, a defendant must show both that defense counsel's representation fell below an objective standard of reasonableness and that the deficient representation prejudiced the defendant. *Id.* at 690-92. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697.

We first address Mr. Childs's argument that his lawyer provided ineffective assistance in failing to renew his motion to sever the cases for trial. We then turn to his lawyer's asserted deficient representation in failing to request an instruction directing jurors to decide the counts separately.

### A. Failure to renew motion to sever

A defendant must generally make a motion to sever offenses before trial, though a severance motion may be made "before or at the close of all the evidence if the interests of justice require." CrR 4.4(a)(1). Because the extent of prejudice resulting from joinder of offenses may not be apparent to the court until the trial unfolds, the rule provides that the defendant "may renew the motion on the same ground before or at the close of all the evidence," thereby alerting the court to the need to reconsider its initial decision. CrR 4.4(a)(2); *see* 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 1724, at 391 (3d ed. 2004). A defendant who elects to proceed with a consolidated trial rather than renew the motion waives any right to severance. CrR 4.4(a)(2) ("Severance is waived by failure to renew the motion."); *State*

11

*v. Henderson*, 48 Wn. App. 543, 551, 740 P.2d 329 (1987). While renewing the motion under CrR 4.4(a)(2) is permissive, Mr. Childs argues that a lawyer who believes a pretrial severance motion was wrongly denied, and that the client would benefit from severance, has an obligation to renew that motion in order to preserve the issue for appeal.

In determining whether joinder of multiple offenses in a single trial results in prejudice, courts consider "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *Russell*, 125 Wn.2d at 63. Two of Mr. Childs's arguments for severance were the most persuasive. The first is that the State's strongest evidence was the recorded telephone call supporting the witness tampering charge, which would not have been relevant in a case involving only the Perrigo charges. The second is that consolidation undermined Mr. Childs's defense of denial and alibi where he was accused of two violent attacks only a week apart. As Mr. Childs points out, a defense based on family member alibis and an accusation that the complainant is "setting him up" will be far less believable to a jury where it is alleged to have happened twice, in short order, to the same defendant. Or, as the State put it in closing argument:

> We've got two strangers individually fabricating reports of assault within a week of each other, both claiming Ben Childs did it. Isn't there a saying about lightning striking twice?

RP at 403.

12

We need not weigh the strength of Mr. Childs's argument for severance, however, because there was a strategic advantage to Mr. Childs in having trial of the cases consolidated that we presume was the reason the motion to sever was not renewed. Both sides recognized the strategic consideration throughout, even if their tactical choices vacillated: consolidation increased the prospect that, if convicted of both sets of crimes, Mr. Childs's sentences would run concurrently rather than consecutively. The first *Strickland* prong proves dispositive here, because Mr. Childs cannot overcome the presumption that his lawyer's decision to waive severance was tactical.

The general rule under RCW 9.94A.589(1)(a) is that a person sentenced for two or more current offenses serves such sentences concurrently. RCW 9.94A.525(1) provides that "[c]onvictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed 'other current offenses' within the meaning of RCW 9.94A.589." Under the general rule, then, Mr. Childs's sentences for the four counts would run concurrently if they were tried together.

Multiple current offenses will ordinarily increase the total length of the offender's concurrent sentences because the current offenses are counted toward and increase the offender score. But before his November 2013 crimes, Mr. Childs had already been convicted of 10 felonies and 2 misdemeanors, making concurrent sentencing particularly advantageous for him.

13

The State could and did argue for exceptional consecutive sentencing. And while it proved successful in doing so, defense counsel couldn't have known that it would succeed. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Mr. Childs had twice lost his argument for severance, to different judges. There were unquestionably common witnesses to assaults that occurred close in time. It was a reasonable strategy for Mr. Childs's lawyer to waive a dicey renewed motion to sever in favor of maximizing the strength of his argument to the court that his client had been whipsawed by the State which, having favored consolidation for its evidentiary advantage, should have to live with its sentencing disadvantage.[2]

---

[2] Defense counsel did persuade the court to impose sentences shorter than those recommended by the State; the court reduced the State's recommended sentence on the Perrigo burglary by 16 months and its recommended sentence on the Provost assault by 24 months, for a total reduction from the State's recommendation of over three years:

| PERRIGO | Offender Score | Seriousness Level | Standard Range (w/o enhancements) | State Recommend. | Sentence Imposed |
|---|---|---|---|---|---|
| Count 1: First Degree Burglary | 13 | VII | 87-116 months | 116 months (9.67 years) | 100 months |
| Count 2: Second Degree Assault | 11 | IV | 63-84 months | | 84 months |

14

Mr. Childs argues that his trial lawyer's pretrial motions and statements during sentencing belie any legitimate or tactical reason for waiving severance, because they reveal that "trial counsel was well aware of the significant prejudice inherent in the joinder of the charges." Br. of Appellant at 14. We draw the opposite conclusion from that record. Because there is a tactical reason why severance might be waived, the fact that the trial lawyer was "well aware" and attentive to the issue makes it *more* likely that the waiver was tactical than that it was an oversight.

Most importantly, it is well settled that we engage in a "strong presumption" that a lawyer's representation was effective. *McFarland*, 127 Wn.2d at 335 (citing *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995)). Even if we did not in fact infer effective representation (and we do), well settled case law requires us to strongly presume effective representation. Mr. Childs fails to meet his burden of establishing the absence

| PROVOST | Offender Score | Seriousness Level | Standard Range | State Recommend. | Sentence Imposed |
|---------|----------------|-------------------|----------------|------------------|------------------|
| Count 1: *Second Degree Assault* | 12 | IV | 63-84 months + 12 months (deadly weapon enhancement) | 96 months (8 years) | 72 months |
| Count 2: *Witness Tampering* | 11 | III | 51-60 months | | 60 months |

CP at 156-58, 187-89; RP at 451, 464.

of any conceivable legitimate tactic explaining counsel's performance. *Reichenbach*, 153

Wn.2d at 130.

### *B. Failure to request instruction*

Mr. Childs also contends that he received ineffective assistance based on his trial

lawyer's failure to request an instruction informing the jury that it was to consider the

charges separately. Where there are multiple counts and a single defendant, the

Washington State Supreme Court Committee on Jury Instructions had provided the

following pattern instruction:

> A separate crime is charged in each count. You must decide each
> count separately. Your verdict on one count should not control your verdict
> on [any] . . . other count.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

3.01, at 80 (3d ed. 2008) (WPIC). In this instance, we need not determine whether Mr.

Childs's lawyer erred in failing to request the instruction because Mr. Childs cannot

demonstrate prejudice.[3]

---

[3] Mr. Childs argues that in denying the pretrial motion to sever, Commissioner
Marinella acknowledged the need for a limiting instruction, thereby placing defense
counsel on notice "that such an instruction was critical to preventing the jury from
unfairly cumulating evidence to [Mr.] Childs's detriment." Br. of Appellant at 14; *see
also* Br. of Appellant at 4, 20; Reply Br. at 5. He quotes the following language from the
hearing on the motion to consolidate:

> I understand the cumulative evidence concerns, and that's where the
> court comes into the—the appropriate jury instructions, and the instructions

16

As pointed out by the State, the prejudice claimed by Mr. Childs is that the jury

could have considered evidence from one case in its deliberation in the other. Yet this

court determined in *State v. Bradford*, 60 Wn. App. 857, 861, 808 P.2d 174 (1991), that

WPIC 3.01 does not tell the jury how it may use evidence but "merely require[s] that the

jury deliberate on each count separately."

In *Bradford*, the defendant was charged with one count of possession of cocaine

and one count of possession of cocaine with intent to deliver. *Id.* at 858. The trial court

denied Mr. Bradford's motion to sever the two counts and included WPIC 3.01 in its

instructions to the jury. *Id.* at 860. During deliberations, the jury asked if it could

consider knowledge gained from one count when deliberating on the other count,

clarifying that "[w]e are speaking of knowledge only, not evidence." *Id.* The trial judge

responded, "The jury is free to determine the use to which it will put evidence presented

during trial." *Id.*

On appeal, Mr. Bradford argued that the trial court's response contradicted WPIC

3.01. *Id.* at 861. Division One rejected this argument, holding that WPIC 3.01 "merely

required that the jury deliberate on each count separately." *Id.* The court held that the

---

to the jury that just because they have multiple counts, you have to find
these individually. So I think there is proper recourse there.

RP at 12. It was the prosecutor who made this statement. The commissioner did refer to
jury instruction in his order to consolidate. CP at 31 (stating that "[t]he court can
adequately instruct the jury on the separate nature of the offenses").

17

jury "was free to consider any evidence relevant to count 1 in deciding count 1," and "was free to consider any evidence relevant to count 2 in deciding count 2." *Id.* Recognizing that WPIC 3.01 was likely the source of the jury's confusion, the court suggested that additional language might be added to the pattern instruction informing the jury that in the absence of a limiting instruction, "all evidence is applicable on all counts, provided that it meets relevance requirements." *Id.* at 862.[4]

Mr. Childs nonetheless cites *State v. Sutherby*, 165 Wn.2d 870, 884-85, 204 P.3d 916 (2009) as establishing that the jury must be able "to compartmentalize the evidence of various counts" and to that end, WPIC 3.01 "is a paramount consideration." Br. of Appellant at 19-20. But *Sutherby* does not support the proposition that every joinder of charges presents a risk of misuse of evidence or that the giving of WPIC 3.01 will prevent misuse of evidence when a risk of misuse exists. The defendant in *Sutherby* was charged with child rape, child molestation, and 10 counts of child pornography. *Sutherby*, 165 Wn.2d at 874. Our Supreme Court held that defense counsel was ineffective for failing to seek severance of the child rape and molestation charges from the child pornography charges, explaining,

---

[4] The comments to WPIC 3.01 presently state that while "[t]he language suggested in *Bradford* may be appropriate in individual cases," the Washington Supreme Court Committee on Jury Instructions has not included it "because the jury will have been instructed as to the use of the evidence in most cases and the suggested language may be more confusing than helpful to jurors." WPIC 3.01, at 80.

18

[s]everance of charges is important when there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or to infer a general criminal disposition. The joinder of charges can be particularly prejudicial when the alleged crimes are sexual in nature. *In this context* there is a recognized danger of prejudice to the defendant *even if the jury is properly instructed to consider the crimes separately*.

*Id.* at 883-84 (emphasis added) (citations omitted).

*Sutherby* is not inconsistent with the holding of *Bradford* that WPIC 3.01 does not tell the jury how it may use evidence. It is the introductory instruction provided at the close of trial that directed the jury that "to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted *that relates to the proposition*." CP at 80 (emphasis added). In terms of process, the jury was given separate to convict instructions for each count setting forth the elements the State must prove for each offense, as well as separate verdict forms for each offense. The deliberative procedure as structured by those instructions and verdict forms called on the jury to decide each count separately. It made the jury's verdict on one count irrelevant to its verdict on any other count.

Mr. Childs has not shown he was prejudiced by his trial lawyer's failure to request that the jury's instructions include WPIC 3.01, and thereby fails to establish ineffective assistance of counsel.

19

## *II. Legal financial obligations*

Mr. Childs next challenges the trial court's imposition of discretionary costs as part of his LFOs without taking into account his present or future ability to pay, as required by RCW 10.01.160(3). Following a criminal conviction, the trial court "may order the payment of a legal financial obligation." RCW 9.94A.760(1); *see also* RCW 10.01.160(1), (2). But RCW 10.01.160(3) provides that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them."[5] At his sentencing hearing, Mr. Childs did not object to the imposition of the LFOs.

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). The rationale for refusing to entertain issues for the first time on appeal is well settled: we "insist[ ] on issue preservation . . . to encourage 'the efficient use of judicial resources.'. . . Issue preservation serves this purpose by

---

[5] The $500 victim assessment, the $200 criminal filing fee, and the $100 DNA collection fee imposed by the court are required irrespective of the defendant's ability to pay. *See* RCW 7.68.035(1)(a); RCW 36.18.020(2)(h); RCW 43.43.7541; *see also State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (noting that, for these costs, "the legislature has directed expressly that a defendant's ability to pay should not be taken into account"). Additionally, while Mr. Childs challenges the imposition of a $500 fine under RCW 9A.20.021, nothing in that statute requires the court to take into account a defendant's financial resources before imposing a fine, "let alone enter findings." *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). Accordingly, the requirement that a trial court consider the defendant's current or future ability to pay only applies to the $750 court appointed attorney fee.

ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (citation omitted) (quoting *State v. Scott*, 110 Wn.2d at 685).

Mr. Childs failed to preserve any error and we decline to exercise discretion to consider the issue.

### *III. No-contact order*

The judgment and sentence entered against Mr. Childs in the case involving Mr. Provost contains a boilerplate no-contact provision prohibiting Mr. Childs from having contact with a victim. The provision was completed with Mr. Provost's name, but the duration of the no-contact order was left blank.

RCW 9.94A.505(8) provides that "[a]s a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." This statute grants a trial court "the discretion to impose a crime-related prohibition up to the statutory maximum for the crime of which the defendant is convicted without resort to aggravating factors of any kind." *In re Rainey*, 168 Wn.2d 367, 375, 229 P.3d 686 (2010). A crime-related prohibition is defined as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). It includes no-contact orders.

21

*Rainey*, 168 Wn.2d at 376.[6] Whether the boilerplate no-contact provision in Mr. Childs's judgment and sentence is sufficient is a question of law, reviewed de novo.

The statutory maximum for Mr. Childs's underlying second degree assault offense, a class B felony, is 10 years. RCW 9A.36.021(2)(a); RCW 9A.20.021(1)(b).

The State concedes the trial court erred in failing to enter an expiration date for the no-contact order. We accept the State's concession and remand for the limited purpose of completing the duration of the no-contact order.

We affirm and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

_____

[6] Unlike former RCW 9.94A.120 (2000), *recodified as* RCW 9.94A.505 (LAWS OF 2001, ch. 10, § 6), nothing in the current Sentencing Reform Act of 1981 (SRA) "directly addresses the maximum time period for which a trial court may impose a no-contact order, or any crime-related prohibition, under RCW 9.94A.505(8)." *State v. Armendariz*, 160 Wn.2d 106, 118, 156 P.3d 201 (2007). In *Armendariz*, however, our Supreme Court held that based on the SRA's plain language, its legislative history, and agency interpretation, "the statutory maximum for the defendant's crime is the appropriate time limit for no-contact orders imposed under RCW 9.94A.505(8)." *Id.* at 120.

22