[No. 460-40923-1.    Division One—Panel 2.    December 7, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK ANTHONY CABIGAS, *Appellant.*

*Paul & Johnson* and *Irving Paul, Jr.,* for appellant.

*Charles O. Carroll, Prosecuting Attorney,* and *Ronald B. Kurilo,* for respondent.

UTTER, J.—Mark Anthony Cabigas was convicted in a trial to the court of illegal possession of heroin in violation of the Uniform Narcotic Drug Act. He appeals, assigning error to the denial of his motion to suppress evidence of heroin obtained by a search of his person. The sole issue we

decide on this appeal is whether from the facts appearing in the record, the arresting officer had probable cause at the time of the arrest, to believe Cabigas either had committed a felony or was in the act of committing a felony. We hold there was no probable cause at the time of the arrest and that the judgment must be reversed.

On September 26, 1968, a search warrant was issued on the basis of a sworn complaint from Officer L. L. Hart, authorizing a search of the "[a]partment of Tony Guibigas[1] located at 1517 Boylston Avenue, Apt. 210, Seattle, King County, Washington."[2]

After the search warrant was obtained, the officers waited outside the apartment building named in the warrant until Cabigas and another person entered. Cabigas was recognized by one of the officers present.

The officers then entered the building and positioned themselves outside apartment 210. While they waited, Cabigas and his companion came down the hall. The officer who was acquainted with Cabigas stopped him and asked him if he lived in the building. Cabigas said he did and indicated his apartment was number 202. The officer then informed Cabigas he was under arrest and a search would be made of apartment 202. The officers searched Cabigas while they were in the hall, but found nothing. He was next taken into apartment 202 and, while the officers

---

[1] The result we reach in this case makes it unnecessary to consider the effect of the misspelling of appellant's name in the search warrant.

[2] The affidavit indicated the officers believed that narcotic drugs were being used, manufactured, sold, bartered, exchanged, given away, furnished or otherwise disposed of or kept, in, about, and upon those premises and that the information was based on the report of a reliable informant, who on numerous occasions in the past had given the officer reliable information. The affidavit of Detective Hart went on to state:

That this informant told affiant that on this date he had been in the apartment above described and had seen what he believed to be heroin. That the informant said he had obtained a sample of the heroin which he turned over to affiant. That affiant tested the material believed to be heroin which he received from the informant, and it proved to be heroin. That based on this information and tested sample, affiant has cause to believe and does believe that heroin is located in the above described apartment.

searched, he seated himself on a kitchen chair, removed his cap, and laid it on the kitchen table. The cap was searched and a substance, later identified as heroin, was found in it.

A police officer may arrest a suspect without first obtaining a warrant if he has probable cause to believe the suspect has either committed a felony or is in the act of committing a felony. Probable cause exists where the facts and circumstances, within the officer's knowledge and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution to believe an offense has been or is being committed. *State v. Mannhalt,* 1 Wn. App. 598, 462 P.2d 970 (1969).

In this case, the only evidence in the record which would tend to establish probable cause to believe Cabigas was in actual or constructive possession of narcotics at the time of his arrest consists of statements in the affidavit for the search warrant and a short additional statement made at the trial.

Detective Henaby, one of the arresting officers, was asked at trial: "Q Did you immediately recognize him? A Yes." No further inquiry was made by the deputy prosecuting attorney into the reasons why the defendant was known to Henaby or what the reasons for recognition were.

The affidavit for the search warrant establishes only that a "Tony Guibigas" lived at apartment 210, at 1517 Boylston Avenue; that an informant had seen what he believed to be heroin; and that a substance was obtained by the informant from apartment 210 which when tested turned out to be heroin.

Cabigas concedes if his arrest in the hallway of the building was lawful, then the search pursuant to that arrest would also be lawful.[3] The state, in turn, concedes if

---

[3]In disposing of the appeal, we do not decide the question of whether the search of apartment 202, as distinguished from apartment 210, was proper under the search warrant. Ordinarily, when the issue is merely whether it is proper to search an apartment which is misnumbered in the search warrant, the mistake is regarded as insignificant error as long as there is enough information given to enable the officer, with reason-

the officers had no probable cause to arrest him in the hallway, they could not take him into the apartment where they had authority to search and then proceed to search him.

The determination of whether probable cause exists involves an examination of the meaning of possession and its relationship to the facts of this case.

█ The definition of possession varies depending upon the context in which it is used, as well as the relationship of the term to the specific legal problem involved. *Baehr v. Penn-O-Tex Oil Corp.,* 258 Minn. 533, 104 N.W.2d 661 (1960).

Our state has recognized in dealing with the question of possession in narcotics cases that unlawful possession may be either actual or constructive. Actual possession has been defined to mean that the goods were in the personal custody of the person charged with possession. Constructive possession has been defined to mean that the one not in actual possession still has dominion and control over the goods. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969).

P. J. Fitzgerald, author of the 12th edition of Salmond on Jurisprudence, at page 270, notes the question of possession involves the possession of sufficient control, either actual or potential, over the object. This control in turn involves an examination of the extent of power over the object the alleged possessor has and his power to exclude other people.

The extent of power the possessor has over the object depends on its amenability to control. The more amenable to control the object is, such as in the instant case with a small object, the higher the degree of control required.

Where actual physical control does not exist, the power to exclude others is an important consideration. The possibility of resumption of physical control may depend on the lack of outside interference due to the possessor's own physical power and influence, the secrecy of the location of

able effort, to identify the premises intended to be searched. *United States v. Contee,* 170 F. Supp. 26 (D.C. Cir. 1959); *People v. Watson,* 26 Ill. 2d 203, 186 N.E.2d 326 (1962).

the object or the customary respect of others for his possession.

The traditional view distinguished between the mental and the physical aspects of possession. The physical aspects comprised the power to use the thing and the existence of grounds for the expectation that the possessor's use would not be interfered with. The mental aspects consisted of an intent to appropriate to oneself the exclusive use of the thing possessed. Fitzgerald notes the intent of the possessor is highly relevant in determining whether possession has been acquired, lost, or abandoned but points out that unless possession is under attack no question of, or need for, intent is involved.

■ No allegation of immediate physical control by Cabigas, prior to the arrest, is made. The sole evidence tending to establish dominion and control for the purposes of constructive possession is the allegation in the affidavit for the search warrant that someone named "Guibigas" resided in and inferentially paid the rent for apartment 210 where a substance, which was in fact heroin, had been seen and obtained. However, the officers, prior to the arrest, learned this allegation was incorrect. Even if we assume Cabigas rented the apartment described in the affidavit, the affidavit failed to state that Cabigas owned the heroin; that the heroin was present a sufficiently long time to justify an inference of knowledge of its presence by Cabigas; that Cabigas was present when the heroin was seen; where in apartment 210 the heroin was seen; that Cabigas intended to exercise control over the heroin; or other facts essential to establish control over the heroin.

The unfortunately abbreviated examination of the officer into the nature of his earlier acquaintance with Cabigas and the affidavit for the search warrant also failed to establish facts from which a man of reasonable caution could believe Cabigas had dominion and control over the heroin.

Absent probable cause for the arrest without a warrant, the subsequent search of the defendant was improper. The

motion to suppress, on the basis of the testimony before the trial judge, should have been granted.

The conviction is reversed and the cause remanded for new trial.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.