[No. 44576. En Banc. August 18, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR L. PARTIN, *Appellant.*

*James E. Barrett* and *Hawman & Barrett,* for appellant.

*Arthur R. Eggers, Prosecuting Attorney,* and *Larry Siegel, Deputy,* for respondent.

STAFFORD, J.—A jury found Arthur Partin guilty of possession of a controlled substance, marijuana. He appealed to the Court of Appeals which in turn certified the matter to this court. We affirm the trial court.

On January 3, 1975, Arthur Partin, vice–president of the Chosen Wheels Motorcycle Club, was arrested as he approached a house at 221 East Oak Street in Walla Walla. The residence was used as a clubhouse by the members of the Chosen Wheels and was being purchased by Chris King, president of the club. At the time of the arrest, police were searching the house under authority of a search warrant issued that day by the Walla Walla District Justice Court. During a 2–hour search, officers seized marijuana and marijuana seeds, scales, guns, two motorcycles, a blue jean jacket and a black leather jacket, a photograph of Partin, correspondence addressed to Partin and to King, and an unemployment application and unemployment warrants in Partin's name.

Trial was commenced April 28, 1975, at which time items found in the house, including marijuana, were introduced in evidence. Defendant Partin did not take the stand, and the defense rested on April 29 at 3:15 p.m., whereupon the State released all of its witnesses. At 9 p.m. that night Partin first informed his attorney that he wanted to take the stand in his own defense. His lawyer warned him that his past record of drug–related felony convictions might damage his case if he testified, but he persisted in his demand. Consequently, on the morning of April 30 defense counsel moved to reopen the case for defendant's testimony.

Defendant Partin's own explanation of his desire to testify reveals that he did not intend to touch upon matters relevant to the criminal charge. Rather, he sought to lessen the impact of any unfavorable inference that might have been drawn by his membership in the Chosen Wheels

Motorcycle Club. The trial judge denied the motion and the case went to the jury.

Defendant was convicted of the crime of possession of a controlled substance. Thereafter, his motions for new trial and for arrest of judgment were denied. This appeal followed.

■ First, defendant Partin argues that the trial judge abused his discretion by refusing to reopen the case to permit him to take the stand. We do not agree. We have held repeatedly that it is entirely within the discretion of the trial court to grant or refuse a motion to reopen a case for the purpose of permitting further testimony. We will not reverse the trial court except for abuse of discretion. *State v. Harmon,* 21 Wn.2d 581, 592, 152 P.2d 314 (1944). *State v. Pilegge,* 61 Wash. 264, 112 P. 263 (1910) is directly in point. In *Pilegge* defense counsel advised his client against taking the stand and rested. The prosecuting attorney released his witnesses and the case was recessed until the next morning. The trial judge denied a defense motion to reopen the case the following day and we held there had been no abuse of discretion. *Pilegge* is controlling here.

■ Further, defendant has cited no authority to support his contention that the trial court abused its discretion in refusing to reopen the case. Assignments of error that are not supported by authority ordinarily will not be considered on appeal. *State v. Young,* 87 Wn.2d 129, 132, 550 P.2d 1 (1976); *Wyatt v. University of Washington,* 84 Wn.2d 1, 6, 523 P.2d 910 (1974).

Next, defendant contends that the search warrant was insufficient. The application for the search warrant was made by Detective Gene Floyd, both by written affidavit and by an oral statement under oath which was tape-recorded by the judge. The written affidavit reads as follows:

> Based upon information received 1–3–75 from a reliable informant affiant has reasonable cause to believe that controlled substances are in the possession of Arthur Partin and other members of the Chosen Wheels

Motorcycle club located at 221 E. Oak St and other vehicles located at that residence.

Other probable cause information in support of this request for a search warrant in addition to this affidavit will be sworn and testified to orally before the magistrate of Walla Walla County this date by affiant.

The portion of the tape–recorded statement relevant to our inquiry states:

Your Honor, based upon information I received on this date, 1–3–75, from a reliable informant, I have reason to believe that marijuana is being kept in the residence of 221 East Oak Street. This is the home of Arthur Partin, also the gathering place for members of the Chosen Wheels Motorcycle Club.

[Judge Martin] All right. Establish the reliability of your informant, first of all, please.

Your Honor, this informant has given information in the past that resulted in at least two arrests and convictions concerning prior drug activity in the Walla Walla area. This informant saw the marijuana at this residence.

[Judge Martin] Are you satisfied as to his reliability?

Yes, I am.

■ The basic test for the probable cause necessary for a magistrate to issue a search warrant based on information obtained from an informant was established in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 73, 84 S. Ct. 1509 (1964). First, the application must set forth the underlying circumstances necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the drugs were where he claimed they were. Second, the affiant must give the underlying circumstances by which he concluded the informant was credible or his information reliable. *State v. Walcott,* 72 Wn.2d 959, 963, 435 P.2d 994 (1967).

In the instant case the *Aguilar* test has been met by the affidavit and the tape–recorded statement. They establish the reliability of the informant and the fact that he saw marijuana at the residence. Partin argues, however, that the warrant was not sufficient in the absence of an actual date on which the alleged illegal activity was observed. His

assertion is based upon *State v. Spencer,* 9 Wn. App. 95, 510 P.2d 833 (1973) and *Rosencranz v. United States,* 356 F.2d 310 (1st Cir. 1966).

The above–cited cases are distinguishable. We agree the underlying facts alleged must be current, not remote in time, and sufficient to justify a magistrate's conclusion that the property sought is probably on the person or premises to be searched at the time he issues the warrant. *State v. Spencer, supra* at 97. However, *Spencer* was concerned with an affidavit executed on March 9 which relied upon sales of a controlled substance allegedly made the previous December 3 and January 7. Remoteness in the *Spencer* time frame is quite different from the current nature of the information found in the instant case. In *Rosencranz v. United States, supra,* neither a date of observation of the alleged criminal activity nor a date as to when the affiant received the information was given. There was *nothing* in the affidavit which referred to "time" except the use of the present tense. Thus, the court correctly observed in a narrow holding:

> We conclude that a combination of undated, conclusory information from an anonymous source and an undated general allegation of personal observation by the affiant, with no other reasonably specific clues to the time of their happening, is inadequate.

*Rosencranz v. United States, supra* at 318.

Affidavits for search warrants must be tested in a commonsense manner rather than hypertechnically as long as the basic *Aguilar* requirements are met. Doubts should be resolved in favor of the warrant. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Walcott, supra* at 962. With this in mind we observe that although the detective in this case did not provide the magistrate with a specific date on which the informant saw the marijuana at the Oak Street residence, he stated that he had received the information that day (the day the warrant was issued) and based thereon, he had reason to believe marijuana was being kept at the house *at*

*that time.* Thus, the magistrate had a reference point by which to determine the current status of the information.

The written affidavit and oral tape recording of Detective Floyd, when read in a commonsense manner, reflect current information and meet the test established in *State v. Clay,* 7 Wn. App. 631, 637, 501 P.2d 603 (1972): "The support for issuance of a search warrant is sufficient if, on reading the affidavits, an ordinary person would understand that a violation existed and was continuing at the time of the application."

We hold that the warrant and the information on which it was based were sufficient.

■ Finally, defendant contends there was insufficient evidence to sustain a charge of possession of a controlled substance, marijuana. His position is not well taken. While there is no evidence of actual possession, *i.e.,* drugs in his personal possession, there was substantial evidence from which the jury could find beyond a reasonable doubt that such drugs were in defendant's "dominion and control," *i.e.,* in his constructive possession as required by *State v. Callahan* 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

In *Callahan,* while the defendant had been staying at the premises for 2 or 3 days, he did not live there and paid no rent. Personal possessions (consisting of books, guns and scales) were found on the premises along with drugs on a desk where he was sitting. Although he admitted having handled the drugs earlier that day, we concluded that "[t]he single fact that he had personal possessions, not of the clothing or personal toilet article type, on the premises is insufficient to support such a conclusion", *i.e.,* constructive possession of the drugs, *State v. Callahan, supra* at 31.

We have not ruled on the issue of constructive possession since *Callahan.* However, the Court of Appeals has had occasion to discuss it on numerous occasions: *State v. Davis,* 16 Wn. App. 657, 558 P.2d 263 (1977); *State v. Harris,* 14 Wn. App. 414, 542 P.2d 122 (1975); *State v. Perry,* 10 Wn. App. 159, 516 P.2d 1104 (1973); *State v. Hults,* 9 Wn. App. 297, 513 P.2d 89 (1973); *State v. Clay,* 7

Wn. App. 631, 501 P.2d 603 (1972); *State v. Werry,* 6 Wn. App. 540, 494 P.2d 1002 (1972); *State v. Emerson,* 5 Wn. App. 630, 489 P.2d 1138 (1971); *State v. Woods,* 5 Wn. App. 399, 487 P.2d 624 (1971); *State v. Turner,* 4 Wn. App. 448, 481 P.2d 906 (1971); *State v. Cabigas,* 3 Wn. App. 740, 477 P.2d 648 (1970).

Defendant relies primarily on *State v. Davis, supra,* in which the Court of Appeals, citing *Callahan,* held that dominion and control may be inferred from such circumstances as payment of rent or possession of keys but that temporary residence, personal possessions in the premises, or knowledge of the presence of controlled substances are insufficient to establish dominion and control. *State v. Davis, supra* at 659.

Defendant contends that under *Davis* the fact that he had been seen at the Oak Street Clubhouse on several occasions, had given that residence as the address for his mail, that mail addressed to him had been received at that address, and that his motorcycle and a photograph of him were found at the residence are insufficient to establish his dominion and control over the drugs or the premises on which they were found. He argues that proof of rent payment and the possession of keys to the house, required by *Davis,* are missing.

Defendant has read too much into *Callahan.* We were not concerned therein with either the specific possession of keys or payment of rent as such. Rather, we were referring to various indicia of dominion and control and in so doing we expressed the thought that the cumulative effect of a number of factors may be a strong indication of constructive possession. That is, we will look at the *totality of the situation* to determine if there is substantial evidence tending to establish circumstances from which the jury can reasonably infer that the defendant had dominion and control of the drugs and thus was in constructive possession of them.

With this standard as a guide, we have reviewed the record, keeping in mind the rule that when the sufficiency

of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Woods, supra* at 404.

Mr. Partin's connection with the Oak Street residence was far from casual. He had been seen there by police officers on numerous occasions throughout the fall and early winter of 1974. His motorcycle had been seen chained to the front porch on several occasions. A police officer who investigated Partin's complaint of a stolen motorcycle was told by Mr. Partin that he could be located at the Oak Street residence if the bike was found. Further, Partin told a number of other people that he could be found at the Oak Street house. While police were searching the house, the phone rang repeatedly. The officers answered two of the calls and the callers asked for "Red" (Partin). Eight people also came to the house during the search. Most of them said they were looking for "Red".

The police search of the house revealed several pieces of evidence from which the jury could infer that defendant was living there. His motorcycle was found on the back porch. There was a photograph of him on the living room wall as well as a newspaper article which gave his address as 221 Oak Street. Police also found a bankbook in the names of Chris King and Darrell Meharry, a payment book for the purchase of the house in the back bedroom. Inside the book were three paycheck stubs in Partin's name. There was men's clothing at the foot of the bed and in a small cabinet in the back bedroom. Boots were found on the floor at the edge of the bed and under it. Three letters addressed to "Red" were also found in the back bedroom. Unemployment warrants from September through December were likewise found in the back bedroom along with an unemployment application, all in his name. Later, when defendant was in jail after the arrest, he endorsed an unemployment check giving the Oak Street address as his

residence. Finally, the largest single quantity of marijuana—5 pounds—was found in a plastic garbage bag just inside the doorway of the back bedroom.

Marijuana was also found in the front bedroom and the kitchen. Although the front bedroom was off limits to everyone but Chris King, the president of the club, the rest of the house was open to all club members.

As vice–president of the club, Partin was acknowledged to have and apparently did assume more control over the clubhouse on Oak Street than did the other members of the Chosen Wheels. This control was evidenced earlier when the police came to investigate a loud party in progress at the house in late September. Partin stepped forward from the group of eight or so people to ask what the trouble was. He told the police that he would have his friends either keep the noise down or move the party.

The cumulative effect of the foregoing evidence is sufficient to establish a total situation from which a jury could reasonably infer that the defendant had dominion and control over the drugs and the portion of the premises on which they were found. The trial court did not err in sending the question of constructive possession to the jury.

The trial court is affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., and HENRY, J. Pro Tem., concur.

Petition for rehearing denied December 6, 1977.