[No. 15602-4-II.    Division Two.    July 5, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK A.
LARUE, *Appellant.*

*Thomas E. Doyle* and *Robert M. Quillian,* for appellant
(appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* and *Amber Fin-
lay, Deputy,* for respondent.

MORGAN, C.J. — Mark LaRue appeals from his conviction of first degree theft by welfare fraud. His challenge is to the sufficiency of the evidence. Thus, we recite the facts in the light most favorable to the State.

Mark LaRue and his wife, Lee Ann, have three children. In the spring of 1989, they wanted to apply for public assistance. Accordingly, Department of Social and Health Services (DSHS) scheduled them for an interview.

Before the interview, Mark signed forms entitled "Application for Assistance" and "Self-Employment Income Report". He did not sign a form entitled "Your Rights and Responsibilities". If he had signed the latter form, he would have been informed in writing, "You are responsible for . . . [r]eporting any changes right away, including income, [m]oving . . . [and] [n]umber of people in the home".[1]

The interview was conducted on May 17, 1989, by a DSHS employee named Myrna Steffensen. According to Lee Ann's later testimony, she attended without Mark. She brought with her the two forms Mark had signed, as well as his driver's license. She gave the forms to Steffensen, and Steffensen let her sign Mark's name to the "Your Rights and Responsibilities" form so there would be no further delay of benefits.

According to Steffensen's testimony, she had no recollection of Mark being at the interview. She thought he might have been, because her practice was to take positive identification and a copy of his driver's license was in her file. She could not say that Mark had signed the form entitled "Your Rights and Responsibilities", nor could she say whether Lee Ann had brought Mark's identification with her to the interview.

DSHS paid benefits from June 1989 to February 1990. Each monthly check was mailed to the LaRue family home and was payable solely to Lee Ann. Each monthly check was endorsed only by Lee Ann. Lee Ann deposited the June check in a joint account against which both she and Mark

---

[1]Clerk's Papers, at 31A.

were authorized to draw. There is no evidence that Mark thereafter drew checks against that account.

Along with each check, DSHS mailed a blank "change of circumstances" form and a blank monthly report form. The change of circumstance forms were not returned. False monthly reports were submitted by Lee Ann, but none was signed by Mark.

From June 1989 until February 1990, Mark was out of the family home, living in his van. In June and July 1989, he earned $225 by working at Target Stores. Between July and December 1989, he earned $3,930 by working at Olympic Cablevision, Ltd. No one notified DSHS of his change of address or his employment.[2]

While Mark was out of the home, he and Lee Ann continued to be in contact. According to Eric Smith, Mark's boss at Cablevision, someone identifying herself as Mark's wife called Mark at work on a number of occasions. Also according to Smith, persons in a car picked Mark up at work on a number of occasions, and he said those persons were his family. Finally, Mark and Lee Ann opened a joint bank account on July 27, 1989, and the signature card showed Mark's employer as Olympic Cable.

In August 1990, a DSHS employee named Gerri Woolf questioned Mark. He said, "My wife was not aware of me working. The jobs were just enough to support me while I was away from home. My wife's help from the State was not enough to stay out of trouble with the bills." About a year later, on June 6, 1991, he also told Woolf "[t]hat he was aware that Lee Ann signed his signature".[3] However, the record does not show whether he was referring to the time of Lee Ann's conduct (1989) or the time of his statement (1991).

On January 31, 1991, the State charged both Mark and Lee Ann with theft in the first degree, by welfare fraud, committed between June 1989 and February 1990. The charge was based on RCW 74.08.331, which provides:

---

[2]According to DSHS, these earnings resulted in an overpayment of $3,231.50 in AFDC-E and $1,192 in food stamps.

[3]Report of Proceedings, at 76-77.

Any person who by means of a willfully false statement, or representation, or impersonation, or a willful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a willful failure to promptly notify the county office in writing as required by law of any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting the person's eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which the person is not entitled or greater public assistance than that to which he or she is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in a state correctional facility for not more than fifteen years.

Lee Ann pleaded guilty, but Mark went to trial in July. The jury returned a verdict of guilty, and he was sentenced to 10 days' jail, 240 hours' community service, 24 months' community supervision, and restitution of $4,423.50.

Mark argues on appeal that the evidence is insufficient to support his conviction. We agree.

■ Evidence is sufficient if, when viewed in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Hansen*, 122 Wn.2d 712, 729, 862 P.2d 117 (1993). All reasonable inferences must be drawn in favor of the State and against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977).

By its terms, RCW 74.08.331 provides for liability as a principal or an accomplice. A person is liable as a principal if he or she obtains or attempts to obtain public assistance to which he or she is not entitled, by one or more of the means stated. A person is liable as an accomplice if he or she aids or abets another in doing the same.

■ To analyze Mark's liability as a principal, we address two questions. (A) Did he obtain or attempt to obtain public assistance by means of a willfully false statement? (B) Did

he obtain or attempt to obtain public assistance by means of a willful failure to reveal a material fact or a willful failure to notify DSHS of a change in circumstances affecting his eligibility for public assistance?

As far as the evidence shows, Mark did not obtain or attempt to obtain public assistance by means of a willfully false statement. His only statements to DSHS were contained in the written forms that he signed before the interview with Steffensen, and there is no evidence those statements were false.

As far as the evidence shows, Mark did not obtain or attempt to obtain public assistance by "a willful failure to reveal any material fact . . . or a willful failure to promptly notify [DSHS] . . . of any change . . . in circumstances affecting [his] eligibility or need for assistance". We assume but do not hold that he owed a duty "to notify the department within twenty days of the receipt or possession of all income or resources not previously declared to the department."[4] RCW 74.04.300. We also assume that he failed to comply with that duty. Nevertheless, there is no evidence that he read or signed the form titled "Your Rights and Responsibilities"; that he read or signed the change of circumstances and monthly report forms that were mailed to the family home; that DSHS ever informed him of his duty in any other way;[5] or that he had independent knowledge of the law. Thus, there is no evidence that he knew of his duty to notify DSHS, and absent evidence of such knowledge, there can be no finding his failure to notify was "willful" rather than inadvertent. We conclude the evidence was insufficient to prove liability as a principal.

---

[4]Whether he actually owed the described duty is a matter we do not consider. Nevertheless, we observe that the jury verdict does not reliably establish that Mark was a recipient of public assistance, for the State proposed and the trial court gave a statutory definition of "recipient" that had been obsolete for more than a decade. Laws of 1980, ch. 84, § 1(9).

[5]RCW 74.04.300 provides in part: "The department shall advise all applicants for assistance that failure to report as required, failure to reveal resources or income, and false statements will result in recovery by the state of any overpayment and may result in criminal prosecution."

■ As far as the evidence shows, Mark did not act as an accomplice of Lee Ann. An accomplice need not have the same state of mind as a principal, but he or she must know that his or her actions will encourage or promote the principal's commission of the crime. *State v. Amezola*, 49 Wn. App. 78, 89, 741 P.2d 1024 (1987). In other words, an accomplice must associate himself or herself with the principal's criminal undertaking, participate in it as something he or she desires to bring about, and seek by his or her action to make it succeed. *In re Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979); *Amezola*, 49 Wn. App. at 89.

The State argues that Mark's knowledge of Lee Ann's criminal enterprise can be inferred because (1) he admitted signing the application for assistance form; (2) he did not report his income while out of the family home; (3) he and Lee Ann opened a joint checking account in July 1989; (4) Lee Ann was seen at Mark's place of employment in the last half of 1989; and (5) Mark told Woolf in June 1991 that he was aware of Lee Ann signing his name. The first four facts are insufficient to support a reasonable inference that he knew of Lee Ann's crime, or that he desired to facilitate it. The details of the statement to Woolf were never developed, and there is no way to discern whether he was referring to the time of Lee Ann's conduct (1989) or the time of his statement (1991). We conclude that the evidence is insufficient to prove liability as an accomplice.

The parties' other arguments lack merit or need not be reached.

Reversed with directions to dismiss.

SEINFELD and HOUGHTON, JJ., concur.