[No. 36257-1-II.   Division Two.   October 30, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPHINE KATHLEEN SPARLING, *Appellant*.

*Dino G. Sepe*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *P. Grace Kingman, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Following a bench trial, Josephine Kathleen Sparling was convicted of first degree robbery (count I); attempting to elude a pursuing police vehicle (count II); unlawful possession of a controlled substance, cocaine (count III); and forgery (count IV). On appeal, Sparling challenges only the first degree robbery conviction, contending that (1) she did not "display" a deadly weapon because a car is incapable of being concealed and (2) there was insufficient evidence to prove, beyond a reasonable doubt, that she used or threatened to use force to retain the stolen gasoline or to overcome resistance to the taking. Because Sparling's car became a "deadly weapon" when used in a particular manner, we hold that there was sufficient evidence to convict Sparling, and we affirm.

## FACTS

¶2 On September 24, 2005, Sparling filled her car's gas tank with $20 worth of gasoline at a Safeway gasoline station in Bonney Lake, Washington. Sparling walked into the attendant's kiosk and attempted to pay using a stolen check belonging to "Nathan Bindara." 1 Report of Proceedings (RP) at 51. The Safeway attendant, Miriam Graham, noticed that the check contained a man's name and asked Sparling for identification, but Sparling said she did not have any with her. Graham told Sparling to wait for Graham to call the store's manager because the manager was authorized to accept a check payment without identification. Graham called the assistant store manager, Troy Williams, asking him to help her authorize the check. A few minutes later, Sparling told Graham that she wanted to get

her keys out of the car, left the kiosk, and promptly drove away.[1] Graham phoned the police and reported the theft.

¶3 When Graham called Williams, he looked at the surveillance security monitor and saw both Graham and Sparling in the kiosk. Williams left the Safeway store's main building and walked outside toward the gasoline kiosk. As he was walking toward the kiosk, Williams saw Sparling leave the kiosk, walk to her car, and begin to drive away at a slow speed.

¶4 Williams, who was wearing a white shirt, tie, and dress slacks with a Safeway name tag, walked toward Sparling's car and raised his hand, signaling for Sparling to stop. Williams testified that he could see Sparling's face and believed that she saw him because she had a startled look on her face. Williams further testified that, when Sparling saw him, she swerved the car toward him and accelerated. Williams testified that he felt threatened because Sparling was driving her car directly at him at a fast speed; that he jumped out of her way, but the car's bumper hit his leg and caused him to spin; and that he regained his balance and was not injured.

¶5 Bonney Lake Police Officer Kyle Torgerson testified that he was driving his marked patrol car back to the Bonney Lake fueling station when he saw a silver car speeding out of the Safeway parking lot, nearly colliding with his patrol car. As he slammed on the brakes, the silver car sped away. Torgerson noticed that one of the car's windows was rolled down, while another rear window was gone. A high speed chase ensued lasting several minutes. The chase ended when Sparling finally stopped her car at a dead-end cul-de-sac and surrendered without incident. Sparling had several outstanding felony King County arrest warrants. Bonney Lake Police Officer Terry Carter arrested Sparling on these warrants and read her *Miranda*[2] warn-

---

[1] Sparling left the check she was attempting to use to pay for the gasoline at the kiosk, and Graham surrendered it to police.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ings while Torgerson searched the car incident to Sparling's arrest.[3]

¶6 Following a bench trial, the trial court convicted Sparling of all counts as charged and sentenced her to 129 months' incarceration. Sparling appealed only her first degree robbery conviction directly to the Washington State Supreme Court. The Supreme Court transferred the case to this court.

## ANALYSIS

SUFFICIENCY OF THE EVIDENCE: FIRST DEGREE ROBBERY

¶7 Sparling contends that the legislature did not intend the term "displays" used in the first degree robbery statute under which she was charged (RCW 9A.56.200(1)(a)(ii)) to include motor vehicles that defendants use to arrive at and depart from a crime scene.[4] Sparling misunderstands the issue.

¶8 What is at issue here is whether there was sufficient evidence showing that Sparling committed first degree robbery when she took the gasoline without paying and used her car as a "deadly weapon" under RCW 9A.04.110(6).

¶9 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). In a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and inter-

---

[3] Officer Torgerson found numerous items in Sparling's car, including several checks and checkbooks belonging to other people; 3.4 grams of cocaine; a plastic scale; and a glass smoking pipe. Torgerson also questioned Sparling at the police station, and she told him that she tried to pay for gasoline using a check belonging to a "Nathan something," a person she did not know. 3 RP at 141.

[4] Sparling agrees that the evidence was sufficient to support a finding of guilt under RCW 9A.56.200(1)(a)(i). But Sparling was not charged under that provision.

preted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And credibility determinations are for the trier of fact and are not subject to appellate review. *State v. Thomas*, 150 Wn.2d 821, 875, 83 P.3d 970 (2004).

¶10 A person commits first degree robbery if she commits robbery and, in committing or fleeing from the crime, is "armed with a deadly weapon" or "[d]isplays what appears to be a firearm or other deadly weapon." RCW 9A.56.200(1)(a)(i), (ii). "Deadly weapon" includes "a 'vehicle' as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

¶11 In this case, the State presented testimony that, at first, Sparling tried to pay for the gasoline with a stolen check, but when the Safeway clerk suspected that Sparling did not have authority to use the check, Sparling fled to her car and drove away. Further evidence showed that when Sparling saw the store manager wave for her to stop the car, Sparling accelerated and drove directly toward the manager, forcing him to jump out of the way to avoid being run over by her car. Despite jumping out of the way, Sparling's car grazed Williams's thigh.[5]

¶12 Sparling argues that the evidence was insufficient to convict her because a person cannot "display" a car as a deadly weapon. That is, before a person can "display" a weapon, the weapon must be concealable and, thus, she did not "display" the car because she drove it and it was visible during the entire event. Sparling cites decisions addressing

---

[5] Sparling further argues that she could not "display what appears to be a deadly weapon" because (1) the car she drove to the scene was "real, not apparent or fake"; (2) the legislature intended to create two alternatives, one intended for real weapons (for the armed alternative) and a second for the apparent or fake weapons (for the display alternative); and (3) she did not make any verbal threats or physical manifestations to "display" the car as a deadly weapon. Br. of Appellant at 18. For the reasons discussed in this opinion, these arguments fail.

whether the offender sufficiently manifested the existence of a concealed weapon to constitute "display"; all holding that a mere threat of the existence of a weapon was insufficient to qualify as a "display." *See State v. Kennard,* 101 Wn. App. 533, 6 P.3d 38 (defendant stating he had a gun and patting his hip was sufficient to constitute "display"), *review denied,* 142 Wn.2d 1011 (2000). But none of these opinions require that the weapon must be capable of being concealed. And Sparling's argument fails.

¶13 As we discussed above, a car is not always a "deadly weapon"; it becomes a deadly weapon only when used in a particular manner. RCW 9A.04.110(6). Here, when Sparling drove her car toward Williams, she was armed with a deadly weapon, her car, by virtue of the manner of its use. Thus, she displayed what appeared to Williams to be a deadly weapon but which, earlier, others might simply have seen as a means of transportation.

¶14 Sparling also argues that a "weapon" must first be hidden to later be displayed. We disagree. But even if this argument were valid, the character of Sparling's car as a deadly weapon was not revealed or displayed until she used it in an attempt to run over Williams. Before that, it appeared to be transportation.

¶15 Finally, Sparling did not testify regarding her state of mind during the incident and the record contains no evidentiary support for defense counsel's arguments regarding Sparling's alternate reasons for "fleeing" the scene. The evidence is sufficient to support the trial court finding that Sparling was guilty of first degree robbery and we affirm.

ARMSTRONG and HUNT, JJ., concur.