IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32553-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN JAYNE LASTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

FEARING, J. — Susan Laster appeals her conviction for resisting arrest. She also contends that the trial court erred when imposing a mental health evaluation as a condition to probation. We affirm both her conviction and sentence.

FACTS

Sixty-four-year-old Susan Laster dwelled with her dog Sarah in a truck on Clark Street, in Republic. Laster stored all of her possessions in the truck or an attached trailer. A Republic ordinance prohibited the parking of a car for more than twelve consecutive hours in designated zones. Laster parked her truck and trailer in front of Anderson's

Grocery in violation of the city ordinance.

On five occasions, Republic Police Chief Jan Lewis instructed Susan Laster to move her truck from the front of the grocery store. Laster ignored Chief Lewis' demand. She also declined Lewis' offer to fill the truck with gas with city funds. The truck's battery died and its radiator fluid bled from the truck. Laster rejected the assistance of a mechanic sent by a local church. The truck languished in front of Anderson's Grocery. Laster received a parking ticket.

During a frozen early morning, Susan Laster shuffled down a Republic main street to earn $5 by shoveling snow. Sarah remained in the truck. City Police Chief Jan Lewis, Officer Matthew Beard, Officer Loren Culp, and a tow truck driver with his truck went to Laster's truck and trailer with the intent of impounding the vehicles. Officer Culp wore a body camera. Chief Lewis knew that Laster pawned many firearms, but believed Laster might still possess a pistol. Laster saw lights near her truck and returned to her wheeled home. Culp blocked traffic for the tow truck operator, while Chief Lewis and Officer Beard hindered Laster.

The tow truck reversed toward Susan Laster's truck, at which time Laster screamed. Officer Matthew Beard testified at trial:

> [Laster] was very agitated, was screaming that we were going to kill her dog. And Chief Lewis tried to explain to her that we were not going to kill her dog and as soon as the vehicle was loaded we would retrieve the animal for her.

2

No. 32553-9-III
*State v. Laster*

Report of Proceedings (RP) at 87. Laster struck Chief Jan Lewis on the shoulder. Lewis

informed Laster that she was under arrest for assault. Lewis later testified:

> A  I tried to explain to Ms. Laster why we were there, what we were going to do, and—she kept—she started off by yelling we were there to kill her dog, and then she struck me.
> Q  Okay.  And [where] did she strike you?
> A  My shoulder.
> Q  Okay.  What was your reaction to that?
> A  I advised her she shouldn't have done that because now I was going to arrest her.
> Q  Okay.  And what was her reaction to that?
> A  Not happy with it.  And we—Off. Beard and I started tussling with her to get handcuffs on her.  She resisted the whole time.  And see—Off. Beard got kicked numerous times in—in one of his legs, and we were finally able to handcuff her.

RP at 63-64.

Susan Laster kicked Matthew Beard in the leg three times.  After hearing a

scream, Loren Culp triggered his body camera and ran toward the skirmish.  Officer Culp

testified:

> [Laster] was struggling, trying to get away from Chief Lewis and Off. Beard.  . . .  Flailing her arms around, screaming and hollering. Kicking her legs.  Just basically trying to get away.

RP at 106.

Chief Jan Lewis and Officer Matthew Beard grabbed opposite arms of Susan

Laster.  The two men handcuffed Laster.  Laster continued to flail and kick.  When

Lewis, Beard, and Loren Culp sought to seat Laster in a patrol vehicle, Laster distended

her legs so that she could not fit into the vehicle.  The officers next strived to consign

3

Laster into a larger truck. Laster grew limp. Laster screamed she would not leave without a matron. The three officers eventually landed Laster into a police van, which transported her to jail. The Republic officers spent ten minutes struggling to place Laster into a vehicle.

During impound of the truck, Officers Loren Culp and Matthew Beard inventoried Susan Laster's belongings. Beard found a loaded .22 pistol near the driver's seat.

## PROCEDURE

The State of Washington charged Susan Laster with two counts of third degree assault and one count of resisting arrest. The State later amended the charges to include one count of unlawful carrying a loaded pistol in a vehicle.

In jail, Susan Laster refused water and food because she suspected both to be poisoned. Ron Casebeer, a mental health professional evaluated Laster. Casebeer concluded that Laster showed signs of mental illness, including paranoia.

The trial court ordered Eastern State Hospital to evaluate Susan Laster's competency to stand trial. Eastern State Hospital issued a report that found Laster competent to stand trial. A psychologist at the state hospital diagnosed Laster, however, as having a "Personality Disorder, Not Otherwise Specified with Borderline and Schizotypal Traits." Clerk's Papers (CP) at 24.

During trial, Chief Jan Lewis, Officer Matthew Beard, and Officer Loren Culp testified for the prosecution. When testifying, each officer described Susan Laster's conduct as "resisting." Laster did not object to the testimony.

The trial court admitted as an exhibit the video from Officer Culp's body camera and permitted the playing of the video to the jury. When the video begins, Susan Laster is already in handcuffs. During the video, Laster screams wildly, while the three officers oscillate between trying to calm Laster and lifting her into a vehicle.

After the State's case-in-chief, the court dismissed the unlawful weapons charge because the State presented no evidence that Laster lacked a concealed weapons permit.

Susan Laster testified in her own defense. Laster denied hitting Chief Jan Lewis and declared:

> they were coming at me. I put my hand out. I did touch him on the shoulder. . . . It was just a defense thing. Yes[, the right hand]. It's just to stop him.

RP at 131. Laster admitted to struggling with the officers, but repudiated that she tried to escape from their clutch. Laster also denied kicking Officer Beard.

Susan Laster believed the officers conspired to arrest her. She explained to the jury:

> They were intent on arresting me. I had no idea what they were going to do with my dog. And they had planned it. I knew that. And I wasn't going to cooperate with them.

RP at 133. When asked by the prosecution why she did not willingly enter the patrol car,

5

Laster responded:

> I had my hands behind my back, I had two coats on. I had been
> arrested for no reason. I had three guys on me. I didn't know where they
> were going to take me. This is a small town, and I'm not liked very much
> here.

RP at 139.

During closing argument, Susan Laster did not argue that her arrest was unlawful.

Laster contended that she did not intend to elude arrest. Her counsel told the jury:

> That's where we start coming into the issue with regard to resisting
> arrest. And we have to take a look at the definitions there. And again,
> we're talking about words. And you look at No. 12, which is the elements.
> Again, the act has to be an intent, and it has to be one of two things:
> either preventing the arrest from occurring, or attempting to prevent the
> arrest from occurring.
> So how do you prevent an arrest from occurring? You can turn and
> run—an officer who's out of shape and can't keep up with you. You can
> hide someplace. You've prevented your arrest.
> How do you attempt? Same situation. Say, you start running. But
> the officer's in good shape. And maybe you slip and fall, and he gets you.
> You attempted to prevent the arrest.
> Now, the two officers have come up the street, the chief says, "You
> struck me; you're under arrest for third degree assault." That's before the
> video starts. The arrest has occurred. How has she attempted to prevent an
> arrest? How had she prevented an arrest? She's already been arrested.
> And that's why the video doesn't count. Anything that has
> happened after that has nothing to do with whether or not she was arrested
> [prior to any resistance, as the officers had already succeeded in
> handcuffing her.]

RP at 207.

The trial court instructed the jury on the charge of resisting arrest:

6

A person commits the crime of resisting arrest when he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her.

. . . .

To convict the defendant of the crime of resisting arrest, each of the following elements of the crime must be proved beyond a reasonable doubt:

1) That on or about the 7th day of February, 2013, the defendant prevented or attempted to prevent a peace officer from arresting her;

2) That the defendant acted intentionally;

3) That the arrest or attempt to arrest was lawful; and

4) That any of these acts occurred in the State of Washington.

CP at 110-11; *accord* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY

INSTRUCTIONS: CRIMINAL §§ 120.05, 120.06 (3d ed. 2008) (WPIC). The trial court did

not direct the jury to determine whether Laster's arrest was lawful. Susan Laster did not

request such an instruction. The court defined "assault" in a jury instruction as:

An assault is an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

CP at 108.

During deliberations, the jury asked the trial court:

When does an arrest start and when does it end[?] When the cuffs go on? When they are in the car? Or when she's in jail?

RP at 218. Defense counsel recommended furnishing the jury with a supplemental

instruction that would define "arrest." The court rejected the suggestion and told the jury

to refer to the existing instructions. An undeterred jury then asked: "If an officer arrests a

7

person, is he liable to rescind the charge and arrest[?]" RP at 221. The trial court again directed the jury to refer to the existing instructions.

The jury found Susan Laster guilty of resisting arrest. The jury failed to render unanimous verdicts on the two charges of third degree assault.

The trial court sentenced Susan Laster to ninety days in jail with seventy-five days suspended contingent on Laster complying with the conditions of her probation. One probation condition required Laster to procure a mental health evaluation from a state licensed mental health professional, file a copy of the evaluation within thirty days, begin any recommended treatment or education within sixty days, and file proof of timely enrollment and completion. The trial court did not cite any statute as a basis for imposing this condition.

During sentencing, the trial court noted the officers' "remarkable patience" in responding to Susan Laster's "profound anger." RP at 247. The court addressed Laster:

> I like to view it as an opportunity, a way to break this impasse, here, and let you go on living in this community but without all these problems.

RP at 248.

## LAW AND ANALYSIS

On appeal, Susan Laster contends: (1) insufficient evidence supports her conviction for resisting arrest, (2) the trial court failed to instruct the jury on determining whether Laster's arrest underlying her conviction for resisting arrest was lawful, (3) the

8

trial court erroneously permitted the arresting officers to use the word "resist" and to thereby testify to an ultimate issue of fact, and (4) the trial court exceeded its sentencing authority when it ordered her to undergo a mental health evaluation and treatment. We reject Laster's contentions and affirm her conviction and sentence.

## Sufficiency of the Evidence

Susan Laster contends insufficient evidence supports her conviction for resisting arrest. We disagree.

Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 789 P.2d 306, 781 P.2d 1308 (1989).

Susan Laster was convicted of resisting arrest in violation of RCW 9A.76.040, which provides: "A person is guilty of resisting arrest if he or she *intentionally* prevents or attempts to prevent a peace officer from *lawfully* arresting him or her." RCW 9A.76.040(1) (emphasis added). Laster challenges two elements of her conviction for insufficient evidence: intent and the lawfulness of the underlying arrest.

"A person acts with intent or intentionally when he or she acts with the objective

or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Susan Laster posits that she intended to stop officers from harming her dog and truck and to protect herself by asking for a matron. Her argument falsely assumes that an act can be motivated by only one or two objectives. Regardless of her underlying or mixed motives, sufficient evidence supports the jury's finding that Laster intended to prevent her arrest. Laster testified that she "wasn't going to cooperate" with the officers. RP at 133. Officer Loren Culp described Laster as struggling, flailing her arms, kicking her legs, and attempting to free herself before Officer Matthew Beard and Chief Jan Lewis handcuffed her. A rational trier of fact could have found an intent to prevent arrest.

Insertion of the word "lawful" in RCW 9A.76.040(1) prevents the State from prosecuting one who used force to prevent an unlawful arrest. *State v. Goree*, 36 Wn. App. 205, 209, 673 P.2d 194 (1983); *State v. Hoffman*, 35 Wn. App. 13, 18, 664 P.2d 1259 (1983). Therefore, we must address the lawfulness of Susan Laster's arrest.

A law enforcement officer may arrest a citizen on probable cause to believe that the citizen has committed a crime. RCW 10.31.100. Chief Jan Lewis arrested Susan Laster based on his belief that she committed third degree assault against him. RCW 9A.36.031(1)(g) defines third degree assault and provides in part:

> A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

10

The primary purpose of the statute is to prohibit assaultive behavior which interferes with the custodian's lawful obligations to ensure a peaceful and orderly custody. *State v. Goree*, 36 Wn. App. at 209 (1983); *State v. Jury*, 19 Wn. App. 256, 269, 576 P.2d 1302 (1978).

"Assault" is not defined in the criminal code. Common law, not the criminal code, supplies several definitions of assault. *State v. Wilson*, 125 Wn.2d 212, 217-18, 883 P.2d 320 (1994). One of these definitions is "'putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm.'" *Wilson*, 125 Wn.2d at 218 (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993)). A touching may also be unlawful because it was neither legally consented to nor otherwise privileged and was either harmful or offensive. *State v. Jarvis*, 160 Wn. App. 111, 118, 246 P.3d 1280 (2011); *State v. Thomas*, 98 Wn. App. 422, 424, 989 P.2d 612 (1999).

Susan Laster struck Chief Jan Lewis on his shoulder before Lewis stated she was under arrest. The State presented no evidence that the touching harmed Chief Lewis. Nevertheless, when assessing the evidence in a light most propitious to the prosecution, Lewis had reason to consider the touching offensive. Therefore, the facts presented at trial support the jury's finding that the arrest of Susan Laster for third degree assault was lawful. Since some facts support the verdict, this court does not question the validity or

wisdom of prosecuting a sixty-four-year-old mentally ill, homeless woman who hits a police officer on the shoulder because of a misguided concern about the safety of a dog who could be her only companion.

Susan Laster emphasizes her lack of conviction on each charge of assaulting a police officer. She may suggest that these State deficiencies conclusively establish that law enforcement officers lacked probable cause to arrest her for assault and it follows that she could not be prosecuted and convicted of resisting arrest. Nevertheless, an absence of a conviction on a charge does not prove an absence of probable cause to arrest for that charge. A police officer need not establish proof beyond a reasonable doubt to hold probable cause.

Susan Laster fails to concede that the jury did not acquit on the two charges of assault. The jury instead did not reach a verdict on those charges. A hung jury does not preclude retrial. *State v. Russell*, 101 Wn.2d 349, 351, 678 P.2d 332 (1984). A later jury could still find Laster guilty of assaulting the officers.

Susan Laster mentions in her briefing a person's right to resist an unlawful arrest. A person may resist an unlawful arrest only if necessary to prevent injury, and the resistance must be proportional to the goal of preventing injury. *State v. Hornaday*, 105 Wn.2d 120, 131, 713 P.2d 71 (1986); *State v. Mann*, 157 Wn. App. 428, 438, 237 P.3d 966 (2010). The use of force to prevent even an unlawful arrest that threatens only a loss of freedom is not reasonable. *State v. Goree*, 36 Wn. App. at 209 (1983). Susan Laster

12

did not argue at trial that she resisted an unlawful arrest. Facts do not support this defense.

## Lack of Jury Instruction

A jury found Susan Laster guilty of resisting arrest in violation of RCW 9A.76.040(1), which reads: "A person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her." The trial court instructed the jury on the elements of resisting arrest. One of those elements is "the arrest or attempt to arrest was lawful." CP at 111. The jury instruction followed the language encouraged by WPIC 120.06. Susan Laster contends the trial court should have delivered an additional instruction directing the jury on how to judge whether the arrest underlying her conviction for resisting arrest was lawful. WPIC 120.07 proposes such an instruction. WPIC 120.07 reads, in part:

> An arrest is *[also]* lawful if the arresting officer had probable cause to believe that the person arrested had committed the crime of (name of crime) *[in the officer's presence]*. "Probable cause" means facts that would cause a reasonably cautious officer to believe that the person had committed that crime. In determining whether the facts known to the officer justified this belief, you may take into account the officer's experience and expertise.

(Emphasis added.)

Susan Laster did not request WPIC 120.07 at trial. She argues instead that she challenged the incomplete instructions when her counsel requested a supplemental instruction defining "arrest" when the jury asked its first question. This argument fails

13

for two reasons. First, a party must notify the trial court of a claimed instructional error before the charge to the jury. *Riblet v. Ideal Cement Co.*, 57 Wn.2d 619, 624, 358 P.2d 975 (1961); *Johnson v. Howard*, 45 Wn.2d 433, 449, 275 P.2d 736 (1954). Second, the late request did not seek an instruction on when an arrest was lawful, but rather what police action constituted an arrest.

Susan Laster forwards two other contentions to obtain appellate review of her second assigned error in the event we conclude she failed to properly preserve the error at trial. First, she argues the error comprises manifest constitutional error. Second, she contends her trial counsel was ineffective by not seeking the additional jury instruction. We address these twin contentions in such order and reject both.

Under RAP 2.5(a), an appellate court may decline to hear assignments of error not raised before the trial court. One exception to this declination rule is a party's assertion of "manifest error affecting a constitutional right." RAP 2.5(a)(3). Under this exception, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

Washington courts have announced differing formulations for "manifest error." One articulation is that the error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Another test is whether the alleged error actually affected the defendant's rights. A showing of actual prejudice makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d at 99 (2009).

14

Susan Laster contends that a "to-convict" jury instruction violates due process if it permits conviction absent proof of each element of a charged offense. We agree, but the argument fails in this appeal, because the trial court's instruction listed each element of the crime of resisting arrest, including the element of a lawful arrest. The gist of Laster's argument is something different than the failure to itemize each element of the crime. Her claimed error is that of not defining some of the words in one of the elements.

Susan Laster advances no decision in which a court held that a failure to define a term or phrase in a "to-convict" instruction violates the defendant's due process rights. We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012), *review denied*, 176 Wn.2d 1021, 297 P.3d 708 (2013). An error not supported by citation is not obvious error and thus not manifest constitutional error.

Susan Laster never argued to the jury that she was unlawfully arrested. Her defense was that she did not resist arrest. She emphasized that she could not resist arrest when she took no physical action until after her arrest. Thus, she cannot establish any harm by the failure to give an instruction circumscribing a lawful arrest.

Susan Laster cites *City of Tacoma v. Nekeferoff*, 10 Wn. App. 101, 516 P.2d 1048 (1973) for the proposition that the jury must be instructed on what constitutes a lawful arrest and what a defendant's rights are in resisting an unlawful arrest. Nevertheless, such an instruction was important in *Nekeferoff* because the defendants interposed the

15

defense of unlawful arrest. While Laster believed her arrest to be the result of a spiteful conspiracy, she did not contend at trial that the arrest was unlawful.

Susan Laster briefly asserts that defense counsel was ineffective for not requesting further instruction on the meaning of "lawful." A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014). Further instruction on the meaning of "lawful" may have harmfully highlighted Laster's conflict with law enforcement. Thus, a tactical reason existed for defense counsel to have withheld a request for the instruction.

Opinion Testimony

During trial testimony, Chief Jan Lewis, Officer Matthew Beard, and Officer Loren Culp all uttered the word "resisting" when portraying Susan Laster's conduct. The word "resisting" is not employed in the jury instruction's elements of the crime. The instruction instead utilized the phrase "prevented or attempted to prevent a peace officer from arresting her." CP at 111. Nevertheless, the crime's label is "resisting arrest." CP at 110-11.

Susan Laster contends that the trial court permitted the arresting officers to testify

to ultimate issues of fact or conclusions of law by mouthing the term "resisting." According to Laster, the testimony, in turn, invaded the province of the jury. Laster argues use of the word "resisting" was tantamount to testifying that she was guilty of a crime.

Susan Laster did not object to the officers' testimony during trial. Therefore, the State argues that Laster failed to preserve this issue for review and that any error was harmless. Laster argues that allowing the testimony constituted manifest constitutional error.

We have already outlined a manifest constitutional error analysis. The appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a). However, a manifest error affecting a constitutional right may be raised for the first time on appeal. RAP 2.5(a)(3). Our Supreme Court has ruled that admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a manifest constitutional error. *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007). To be manifest, the testimony must be an explicit or nearly explicit opinion on a victim's credibility or the defendant's guilt. *State v. King*, 167 Wn.2d 324, 332, 219 P.3d 642 (2009).

Susan Laster cites to *State v. Quaale*, 182 Wn.2d 191, 340 P.3d 213 (2014). In *Quaale*, a drunk driving prosecution, a trooper testified over defense counsel's objection that he had "no doubt [the defendant] was impaired." 182 Wn.2d at 195. *Quaale* is

17

readily distinguishable on the ground that the issue was preserved for appeal because of the contemporaneous objection. Also, the trooper's opinion addressed the core issue of whether Quaale drove while under the influence of alcohol, the only disputed element of the crime.

In the case on appeal, Susan Laster admitted to not cooperating. An officer's body camera video showed Laster's recalcitrance. Whether she resisted was not the issue at trial. Instead, Laster asserted a defense that she was already safely in police custody at the time of her resistance. The core issue was whether Laster was already under arrest. Assuming the testimony constituted error, the evidence was harmless and did not constitute manifest error.

Mental Health Evaluation and Treatment

Susan Laster last contends the trial court committed error when it ordered her to undergo a mental health evaluation and treatment. Laster argues that the trial court exceeded its statutory authority under RCW 9.94B.080, a section of the Sentencing Reform Act of 1981, ch. 9.94A RCW that reads:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense. An order requiring mental status evaluation or treatment must be based on a presentence report and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of

18

insanity. The court may order additional evaluations at a later date if deemed appropriate.

Susan Laster's evaluation of RCW 9.94B.080 is misplaced. The trial court did not order Laster to undergo a mental health evaluation and treatment under that statute. Laster was found guilty of a misdemeanor, not a felony. The Sentencing Reform Act, including RCW 9.94B.080, applies only to felonies and does not operate to limit the traditional discretion that courts have when sentencing a misdemeanor offender. *Harris v. Charles*, 171 Wn.2d 455, 465, 256 P.3d 328 (2011).

Courts possess wide discretion when setting probation conditions for misdemeanors. *State v. Deskins*, 180 Wn.2d 68, 78, 322 P.3d 780 (2014). Misdemeanor sentencing courts have the discretion to issue suspended sentences or to impose sentences and conditions with carrot-and-stick incentives to promote rehabilitation, a goal of misdemeanor sentencing. *Harris v. Charles*, 171 Wn.2d at 465 (2011); *Wahleithner v. Thompson*, 134 Wn. App. 931, 941, 143 P.3d 321 (2006).

The trial court did not abuse its discretion. Susan Laster refused water and food in jail on the fear both were poisoned. A psychologist diagnosed Laster with a personality disorder with borderline and schizotypal traits. Laster, when testifying, referenced her struggles with the community.

## CONCLUSION

We affirm Susan Laster's conviction for resisting arrest and her sentence.

19

No. 32553-9-III
*State v. Laster*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

20